IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

SMITH & NEPHEW, INC.                    )
                                        )
                Plaintiff,              )
                                        )
v.                                      )    Civil Action No.
                                        )    **FILED: JULY 31, 2008**
EXOGEN SOLUTIONS LLC,                   )    **08CV4362**
                                        )    **JUDGE PALLMEYER**
                Defendant.              )    **MAGISTRATE JUDGE ASHMAN**
                                             **AEE**

## <u>COMPLAINT</u>

Plaintiff Smith & Nephew, Inc. ("Plaintiff") for its Complaint against Defendant Exogen Solutions LLC ("Defendant") hereby states as follows:

1.      This is an action for trademark infringement, unfair competition, and dilution under the U.S. Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*. (the "Lanham Act"); for unfair competition, deceptive trade practices, injury to reputation, and dilution under comparable statutory claims, namely the Uniform Deceptive Trade Practices Act, §§ 815 ILCS 510/1 *et seq*. (the "UDTPA"), the Consumer Fraud and Deceptive Business Practices Act, §§ 815 ILCS  505/1 *et seq*. (the "CFDBPA"), and the Trademark Registration and Protection Act, § 765 ILCS 1036/65 (the "Illinois Anti-Dilution Act"); as well as for common law trademark infringement and unfair competition claims.

2.      Defendant has been formed recently under a name – Exogen Solutions LLC – and has begun using the name and mark EXOGEN, which are essentially identical to the corporate name of Plaintiff's wholly-owned subsidiary Exogen, Inc. and Plaintiff's federally registered EXOGEN Marks (as pled more specifically below), in connection with products and services marketed to the health care industry.  Continued use in commerce of Defendant's EXOGEN

name and mark on or in connection with products and services marketed to the health care industry is likely to cause confusion of the relevant consuming public in that they are likely to believe mistakenly that Defendant's EXOGEN name and mark and the products and services provided thereunder are connected, affiliated with, sponsored, approved, or otherwise authorized by Plaintiff, Plaintiff's wholly-owned subsidiary Exogen, Inc., and/or its federally registered EXOGEN Marks.  In addition, this continued use will lessen the capacity of Plaintiff's famous and distinctive EXOGEN Marks to distinguish Plaintiff's products from those of others.

### Jurisdiction and Venue

3.    This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Plaintiff's comparable state statutory and common law claims under 28 U.S.C. §§ 1338 and 1367.

4.    This Court has personal jurisdiction over Defendant because Defendant has engaged in business activity and has purposefully directed said activity to the public causing injury in this judicial district, and has provided services to the public within this judicial district in the ordinary course of trade, and has otherwise made or established contacts within this judicial district sufficient to permit the exercise of personal jurisdiction.

5.    This District is a proper venue pursuant to 28 U.S.C. § 1391.

### The Parties

6.    Plaintiff is a corporation incorporated under the laws of the state of Delaware with its principal offices at 1450 Brooks Road, Memphis, Tennessee 38116.  Plaintiff is a world leader in the manufacture of a wide range of medical devices, instruments and accessories in the health care industry.

7.     Defendant is a corporation incorporated under the laws of the state of Delaware having offices at 55 East Monroe Street, Suite 2600, Chicago, Illinois 60603.

8.     Upon information and belief, Defendant is a wholly-owned subsidiary of Technology Solutions Company, a provider of products and services to the health care industry.

### Facts Common To All Claims For Relief

9.     Plaintiff is the owner of several federal trademark registrations for marks consisting of or including the designation "EXOGEN" for a line of medical devices including EXOGEN (U.S. Reg. No. 2,508,939) and EXOGEN 4000+ (U.S. Reg. No. 3,166,561) (collectively "Plaintiff's EXOGEN Marks"). True and correct copies of the Certificates of Registration for Plaintiff's EXOGEN Marks are attached hereto as Exhibit A.

10.     Plaintiff has long been engaged in the business of manufacturing, distributing, and marketing a line of medical devices under Plaintiff's EXOGEN Marks to the health care industry, including medical devices that accelerate muscular and skeletal tissue healing.

11.     As a result of the extensive promotion and publicity of Plaintiff's EXOGEN Marks on or in connection with its products, Plaintiff's EXOGEN Marks have come to be well known and recognized and relied upon in the health care industry as identifying Plaintiff's products.

### The Defendant And Its Infringing Conduct

12.     On or about June 8, 2007, Defendant's parent company registered the domain name <exogeninc.com>. A true and correct copy of the domain name registration is attached hereto as Exhibit B.

13.     According to publicly available Delaware corporate records, Defendant incorporated or formed its company using the name "Exogen" on or about June 19, 2007. A true

3

and correct copy of a printout from the State of Delaware Division of Corporations reflecting this incorporation information is attached hereto as Exhibit C.

14.    Upon information and belief, Defendant is a products and services company focused on the "operational transformation" of healthcare providers and manufacturers.

15.    In December 2007, Defendant issued a press release announcing its formation under the name Exogen Solutions, Inc.  A true and correct copy of the press release is attached hereto as Exhibit D.

16.    On March 18, 2008, Plaintiff delivered via certified mail a letter to Defendant notifying Defendant that its use of the EXOGEN name and mark was likely to cause confusion and deceive the relevant consuming public into mistakenly believing that Defendant and its products and services are licensed, sponsored, authorized, or endorsed by Plaintiff or its wholly-owned subsidiary.  A true and correct copy of Plaintiff's March 18, 2008 letter is attached hereto as Exhibit E.

17.    On April 9, 2008, Defendant's counsel replied, denying Plaintiff's claims.  A true and correct copy of Defendant's counsel's response letter is attached hereto as Exhibit F.

18.    Despite Plaintiff's objections, Defendant has continued to use the EXOGEN name and mark.  Defendant has further continued to maintain an Internet website that is accessed through the domain name <exogeninc.com>.

19.    Defendant's use of  the EXOGEN name and mark and of the <exogen.inc.com> domain name on or in connection with the promotion of its products and services in the health care industry is likely to confuse or deceive the public into believing that Defendant and/or its products and services are affiliated, connected, or associated with Plaintiff, Plaintiff's wholly-owned subsidiary, and/or Plaintiff's EXOGEN Marks.  The likelihood of confusion,

4

mistake, and deception engendered by Defendant's infringement of Plaintiff's EXOGEN Marks is causing irreparable harm to the goodwill symbolized by the EXOGEN Marks and the reputation for quality that they embody.

20.    Upon information and belief, Defendant has willfully engaged in the unauthorized use of the EXOGEN name and mark.

21.    Upon information and belief, Defendant is deliberately and unlawfully attempting to trade upon the commercial value, reputation and goodwill of Plaintiff and/or Plaintiff's EXOGEN Marks, and has deliberately and intentionally attempted to confuse or deceive customers as to an affiliation, connection or association between Defendant and its products and services, and Plaintiff, Plaintiff's wholly owned subsidiary, and/or Plaintiff's EXOGEN Marks.

22.    Defendant's infringing activities have caused and, unless restrained by this Court, will continue to cause severe and irreparable harm to Plaintiff, to the value of Plaintiff's EXOGEN Marks, and to the goodwill associated therewith, for which there is no adequate remedy at law.

23.    Defendant's EXOGEN mark and Plaintiff's EXOGEN Marks are identical in sound, sight and commercial impression.

24.    Plaintiff's wholly-owned subsidiary and Defendant each use the term "Exogen" as part of a corporate or trade name.

25.    The products and services provided by Defendant are similar or are related to products provided by Plaintiff.

26.    Defendant and Plaintiff market products and/or services to the health care industry and utilize similar channels of trade.

### Count One

### Trademark Infringement Under the Lanham Act

27.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 26 as if fully set forth herein.

28.     Defendant's use of the EXOGEN name and mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's products or services are manufactured or distributed by Plaintiff or Plaintiff's wholly-owned subsidiary, or that Defendant and/or its products or services are associated or connected with Plaintiff, Plaintiff's wholly-owned subsidiary, and/or Plaintiff's EXOGEN Marks, or have the sponsorship, endorsement, or approval of Plaintiff.

29.     Defendant has used a name and mark confusingly similar to Plaintiff's federally registered EXOGEN Marks in violation of the Lanham Act, 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation symbolized by its federally registered EXOGEN Marks, for which Plaintiff has no adequate remedy at law.

30.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's federally registered EXOGEN Marks to Plaintiff's great and irreparable injury.

31.     Defendant has caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

6

## Count Two

## Unfair Competition Under the Lanham Act

32.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 31.

33.     Defendant's use of the EXOGEN name and mark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's products and services are manufactured or distributed by Plaintiff or Plaintiff's wholly-owned subsidiary, or that Defendant and/or its products or services are affiliated, connected, or associated with Plaintiff, Plaintiff's wholly-owned subsidiary and/or Plaintiff's EXOGEN Marks, or have the sponsorship, endorsement, or approval of Plaintiff.

34.     Defendant has made false representations, false descriptions, and false designations of origin of its products and services in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the EXOGEN Marks, for which Plaintiff has no adequate remedy at law.

35.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill of the name of Plaintiff and/or its wholly-owned subsidiary, or the association with Plaintiff's EXOGEN Marks to the great and irreparable injury of Plaintiff.

36.     Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

7

## Count Three

### Federal Trademark Dilution

37.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 36.

38.     Plaintiff has extensively and continuously promoted and used its EXOGEN Marks throughout the United States, and the mark has thereby become a famous and well-known symbol of Plaintiff's products.

39.     Defendant is using in commerce an identical mark that dilutes and is likely to dilute the distinctiveness of Plaintiff's EXOGEN Marks by eroding the public's exclusive identification of these famous marks with Plaintiff, and otherwise lessening the capacity of Plaintiff's EXOGEN Marks to identify and distinguish Plaintiff's products.

40.     Defendant has caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive EXOGEN Marks in violation of 15 U.S.C. § 1125(c), and Plaintiff therefore is entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116, and 1117.

## Count Four

### State Unfair and Deceptive Trade Practices

41.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 40 as if fully set forth herein.

42.     Defendant has been and is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of goods or services, and causing a likelihood of

confusion as to the affiliation, connection, or association with Plaintiff, Plaintiff's wholly-owned subsidiary, and/or Plaintiff's EXOGEN Marks.

43.    Defendant's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the Illinois Uniform Deceptive Trade Practices Act, §§ 815 ILCS 510/1 to 510/7.

44.    Defendant's unauthorized use of a name and mark confusingly similar to Plaintiff's EXOGEN Marks has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover costs and reasonable attorneys' fees.

## Count Five

## State Consumer Fraud And Deceptive Business Practices

45.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 44.

46.    Defendant has been and is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of goods or services, and causing a likelihood of confusion as to the affiliation, connection, or association with Plaintiff, Plaintiff's wholly-owned subsidiary, and/or Plaintiff's EXOGEN Marks.

47.    Defendant's infringing activities have been and are being committed with the intent to induce consumer reliance in a deceptive manner.

48.    Defendant's infringing activities have been and are occurring in the ordinary course of a business, trade, or commerce.

49.    Defendant's infringing activities violate the Illinois Consumer Fraud And Deceptive Business Practices Act, §§ 815 ILCS 505/2.

50.     Defendant's infringing activities are being undertaken with actual or deliberate intent to harm or an utter indifference to or conscious disregard for Plaintiff's EXOGEN Marks.

51.     Defendant's unauthorized use of a name and mark confusingly similar to Plaintiff's EXOGEN Marks has caused and is likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief, actual damages, punitive damages, costs and reasonable attorneys' fees.

### Count Six

### State Anti-Dilution

52.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 51 as if fully set forth herein.

53.     Plaintiff has extensively and continuously promoted and used its EXOGEN Marks in the state of Illinois, and the mark has thereby become a famous mark in the state of Illinois in connection with identifying Plaintiff's products.

54.     Defendant is using in commerce an identical name and mark that dilutes and is likely to dilute the distinctiveness of Plaintiff's EXOGEN Marks by eroding the public's exclusive identification of these famous marks with Plaintiff, and otherwise lessening the capacity of the marks to identify and distinguish Plaintiff's products.

55.     Defendant has caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive EXOGEN Marks in violation of Illinois's Anti-Dilution Act, § 765 ILCS 1036/65, and as such, Plaintiff is entitled to injunctive relief, actual damages, and such other relief as the Court deems as proper and necessary, including punitive damages for Defendant's willfulness.

10

## Count Seven

## Common Law Trademark Infringement and Unfair Competition

56.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 55 as if fully set forth herein.

57.    Defendant's actions constitute common law trademark infringement and unfair competition in violation of the common law of the State of Illinois, and have created and will continue to create a likelihood of confusion to the irreparable injury of Plaintiff unless restrained by this Court, and Plaintiff has no adequate remedy at law for this injury.

58.    On information and belief, Defendant acted with full knowledge of Plaintiff's use of, and statutory and common law rights to, Plaintiff's EXOGEN Marks and without regard to the likelihood of confusion of the public created by the Defendant's activities.

59.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's EXOGEN Marks to the great and irreparable injury of Plaintiff.

60.    As a result of Defendant's acts, Plaintiff is entitled to injunctive relief, actual damages, punitive damages, costs, attorneys' fees, and other amount as the Court deems proper.

## Prayer for Relief

WHEREFORE,  Plaintiff prays for judgment against Defendant as follows:

1.    That the Court enter judgment that Defendant's actions have violated and continue to violate the rights of Plaintiff under Sections 32 and 43 of the Lanham Act, federal dilution, Illinois's comparable deceptive trade practice and antidilution statutes, and under the common law of Illinois.

11

2.      That the Court preliminarily and permanently enjoin Defendant, its agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them:

(a)      from using in connection with the promotion, advertising or offering in connection with the Defendant's products or services or in the name of its business, the name or mark EXOGEN or any other trademark, service mark, name, logo or source designation of any kind that is confusingly similar to or that dilutes or is likely to dilute the distinctiveness of Plaintiff's EXOGEN Marks;

(b)      from otherwise competing unfairly with Plaintiff in any manner; and

(c)      from conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) and (b) above.

3.      That the Court order Defendant, its agents, servants, employees, attorneys and all those persons in active concert or participation with any of them to promptly deactivate the <exogeninc.com> website, transfer the <exogeninc.com> domain name to Plaintiff at no charge, and refrain from future domain name registration or use of names or marks confusingly similar to Plaintiff's EXOGEN Marks or variations thereof.

4.      That the Court order Defendant, its agents, servants, employees, and all  persons in active concert or participation with any of them, to deliver up for destruction, or show proof of

destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles and advertisements, and any other materials in print or electronic form in their possession or control, that depict the name or mark "EXOGEN" and any materials or articles used for making or reproducing the same as provided by 35 U.S.C. § 1118;

5.     That the Court order Defendant to file with the Court and to serve upon counsel for Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

6.     That Plaintiff recover all damages it has sustained as a result of Defendant's infringement, dilution, unfair competition, and unfair trade practices;

7.     That said damages awarded to Plaintiff be trebled pursuant to 15 U.S.C. § 1117(a);

8.     That an accounting be directed to determine Defendant's profits resulting from its infringement, unfair competition and unfair trade practices, and that such profits be paid over to Plaintiff and increased as the Court finds to be just and proper under the circumstances of this case;

9.     That the Court declare that this is an exceptional case and award Plaintiff its reasonable attorneys' fees for prosecuting this action pursuant to 15 U.S.C. § 1117(a);

10.     That the Court award Plaintiff punitive damages in such amount as the Court finds arises from the willful acts of common law unfair competition;

11.     That Plaintiff recover its costs of this action and prejudgment interest; and

12.     That Plaintiff recover such other and further relief as the Court may deem just and proper.

Date:  July 31, 2008

/s/ Daniel D. Frohiling
Daniel D. Frohling
Thomas P. Jirgal
LOEB & LOEB LLP
321 North Clark, Suite 2300
Chicago, Illinois  60654
Telephone:  (312) 464-3100
Facsimile:   (312) 464-3111
dfrohling@loeb.com
tjirgal@loeb.com

Of Counsel:

Christopher P. Bussert
Jonathan D. Goins
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555
cbussert@KilpatrickStockton.com
jgoins@KilpatrickStockton.com               Attorneys for Plaintiff Smith & Nephew, Inc.

JUDGE PALLMEYER
MAGISTRATE JUDGE ASHMAN

AEE

# EXHIBIT A

Int. Cl.: 10

Prior U.S. Cls.: 26, 39 and 44

## United States Patent and Trademark Office

Reg. No. 2,508,939
Registered Nov. 20, 2001

## TRADEMARK
### PRINCIPAL REGISTER

## EXOGEN

EXOGEN, INC. (DELAWARE CORPORATION)
10 CONSTITUTION AVENUE
PISCATAWAY, NJ 08855

FOR: MEDICAL DEVICE FOR ACCELERATING MUSCULAR AND SKELETAL TISSUE HEALING, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 4-15-1993; IN COMMERCE 4-15-1993.

OWNER OF U.S. REG. NOS. 1,904,306, 2,211,871 AND OTHERS.

SER. NO. 75-921,554, FILED 2-17-2000.

CHARLES L. JENKINS, EXAMINING ATTORNEY

Int. Cl.: 10

Prior U.S. Cls.: 26, 39, and 44

United States Patent and Trademark Office

Reg. No. 3,166,561
Registered Oct. 31, 2006

## TRADEMARK
### PRINCIPAL REGISTER

# EXOGEN 4000+

SMITH & NEPHEW, INC. (DELAWARE COR-
PORATION)

1450 BROOKS ROAD

MEMPHIS, TN 38116

FOR: ULTRASONIC MEDICAL DEVICE FOR
ACCELERATING HEALING IN MUSCULAR, SKE-
LETAL, AND SOFT TISSUE, IN CLASS 10 (U.S. CLS.
26, 39 AND 44).

FIRST USE 8-7-2006; IN COMMERCE 8-7-2006.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,904,306, 2,508,939,
AND OTHERS.

SN 78-608,647, FILED 4-14-2005.

NORA BUCHANAN WILL, EXAMINING ATTOR-
NEY

# EXHIBIT B



Network**Solutions**.

**Call us 1-800-333-7680**

Shopping Cart

Login | Help

# WHOIS Search Results

Available **exogeninc** extensions:



| .org | .us | .mobi | .biz | .de | .tv | .co.uk | .eu | .bz |
|------|-----|-------|------|-----|-----|--------|-----|-----|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Order Selected Domain(s) »**



**NEW! VPS HOSTING**

Get the power of a dedicated server at a fraction of the cost.

LEARN MORE

## Your WHOIS Search Results



### exogeninc.com

Services from Network Solutions:

**Certified Offer Service** - Let us help you get this domain name!

**Backorder** - Try to get this name when it becomes available.

**SSL Certificates** - Get peace of mind with a secure certificate.

**DOMAIN OPTIONS**

**Premium Names** 

☐ exogenous.net
**$2,488**

☐ aftacontrolsinc.com

**$300**

Enhanced Business Listing - Promote your business to millions of viewers for only $1 a month!

The data contained in GoDaddy.com, Inc.'s Whois database,
while believed by the company to be reliable, is provided "as is"
with no guarantee or warranties regarding its accuracy.  This
information is provided for the sole purpose of assisting you
in obtaining information about domain name registration records.
Any use of this data for any other purpose is expressly forbidden without the prior written
permission of GoDaddy.com, Inc.  By submitting an inquiry,
you agree to these terms of usage and limitations of warranty.  In particular,
you agree not to use this data to allow, enable, or otherwise make possible,
dissemination or collection of this data, in part or in its entirety, for any
purpose, such as the transmission of unsolicited advertising and
and solicitations of any kind, including spam.  You further agree
not to use this data to enable high volume, automated or robotic electronic
processes designed to collect or compile this data for any purpose,
including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified
in the "registrant" field.  In most cases, GoDaddy.com, Inc.
is not the registrant of domain names listed in this database.

exogenous.com
**$8,000**

comisinc.com
**$300**

incit.net
**$2,088**

brianbartlettinc.com

**$300**

incweb.net
**$2,888**

**Misspellings**

exegeninc.com

exageninc.com

ex0geninc.com

exgeninc.com

exoganinc.com

exogoninc.com

Registrant:
    Technology Solutions Company
    55 East Monroe, Suite 2600
    Chicago, Illinois 60603
    United States

    Registered through: GoDaddy.com, Inc. (http://www.godaddy.com)
    Domain Name: EXOGENINC.COM
        Created on: 08-Jun-07
        Expires on: 08-Jun-09
        Last Updated on: 18-Feb-08

    Administrative Contact:
        Baya, Marwan  mbaya@techsol.com
        Technology Solutions Company
        55 East Monroe, Suite 2600
        Chicago, Illinois 60603
        United States
        3122284569

    Technical Contact:
        Baya, Marwan  mbaya@techsol.com
        Technology Solutions Company
        55 East Monroe, Suite 2600
        Chicago, Illinois 60603
        United States
        3122284569

    Domain servers in listed order:
        NS57.1AND1.COM

☐ exog3ninc.com

☐ exogninc.com

**Similar Names**

☐ exogen-llc.com

☐ exogenllc.com

☐ exogen-corp.com

☐ blueexogeninc.com

☐ exogeninchouse.com

☐ exogenincorporated.com

☐ exogen-corporation.com

☐ exogencorporation.com

**Add Domain(s) to Cart »**

**SEARCH AGAIN**

NS58.1AND1.COM

The previous information has been obtained either directly from the registrant or a registrar of the domain name other than Network Solutions. Network Solutions, therefore, does not guarantee its accuracy or completeness.

Show underlying registry data for this record



| | |
|---|---|
| **Current Registrar:** | GODADDY.COM, INC. |
| **IP Address:** | 74.208.19.223 (ARIN & RIPE IP search) |
| **IP Location:** | US(UNITED STATES) |
| **Record Type:** | Domain Name |
| **Server Type:** | Apache 1 |
| **Lock Status:** | ok |
| **Web Site Status:** | Active |
| **DMOZ** | no listings |
| **Y! Directory:** | see listings |
| **Web Site Title:** | Healthcare consulting services, PACS consultant for enhanced customer experience |
| **Meta Description:** | Exogen Inc is a leading provider of healthcare consulting services and PACS implementation for consumer driven healthcare. |
| **Meta Keywords:** | healthcare consulting services healthcare, consulting, services, PACS consultant |
| **Secure:** | No |
| **E-commerce:** | No |

| Traffic Ranking: | Not available |
|---|---|
| Data as of: | 22-Apr-2008 |



**Need to get your business online?**
Our professional designers can build a custom Web site for your business.
$11.95/month, plus a $499.00 design fee





**PerformanceClicks™ from Network Solutions**
Create and manage your pay per click advertising from as low as **$125/month** plus **$99 one time set-up fee**

**SOLUTIONS TO GET ONLINE**
    Domain Names
    Web Hosting
    Web Site Builder
    Professional Web Design
    Email Hosting

**SOLUTIONS TO SELL ONLINE**
    Ecommerce Hosting
    Ecommerce Web Design
    Merchant Accounts

**SOLUTIONS TO GET CUSTOMERS**
    Online Marketing
    PPC Advertising
    SEO Services

**SOLUTIONS FOR ONLINE SECURITY**
    SSL Certificates
    Private Domain Registration
    Email Security

**SOLUTIONS TO SAVE MONEY**
    Promotions & Free Offers
    Earn Airline Offers

**COMPANY INFORMATION**
    Network Solutions Labs
    Reseller Programs
    Affiliates
    SEO Training
    Resources and Learning Center
    Small Business Blog
    About Us
    Jobs
    WHOIS Search
    Site Map
    Privacy Policy
    Terms of Use

     



**100% Secure Transaction**
For your protection, this Web site is secured with the highest level of SSL Certificate encryption.

© Copyright 2008 Network Solutions. All rights reserved.

08CV4362
JUDGE PALLMEYER
MAGISTRATE JUDGE ASHMAN

AEE

# EXHIBIT C

 

# State of Delaware
## The Official Website for the First State

Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & Lo

State Directory | Help | Search Delaware :      Citizen Services | Business Services | V

---

**Department of State: Division of Corporations**

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions   View Search Results

---

## Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | 4374422 | Incorporation Date / Formation Date: | 06/19/2007 (mm/dd/yyyy) |
| Entity Name: | EXOGEN SOLUTIONS LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | THE CORPORATION TRUST COMPANY | | |
| Address: | CORPORATION TRUST CENTER 1209 ORANGE STREET | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19801 |
| Phone: | (302)658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information   Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

---

site map | about this site | contact us | translate | delaware.gov

JUDGE PALLMEYER
MAGISTRATE JUDGE ASHMAN

AEE

# EXHIBIT D

# TSC Launches Exogen Subsidiary

Tue Dec 11, 2007 9:00am EST

New Business Unit Focused on Improving the Experience of
                Healthcare Providers and Manufacturers
CHICAGO--(Business Wire)--Technology Solutions Company (NASDAQ: TSCC),
announced today that
it has formed a new business subsidiary named Exogen Solutions LLC,
operating under the name Exogen. The new company is focused on
creating value and improving the experience of healthcare providers
and manufacturers. The new subsidiary will operate alongside its TSC
subsidiary, which is focused on SAP system deployments. The current,
non-SAP focused employees will form the employee basis of Exogen.

    "Exogen takes the best of our services and experience outside the
healthcare market and marries it with our innovative healthcare
products and services to create a new solutions company with unique
intellectual property that is committed to creating value for
healthcare providers and manufacturers," said Milton Silva-Craig,
President and CEO of Exogen, and who continues as President and CEO of
Technology Solutions Company.

    Exogen's solutions will help lead the transformation of healthcare
providers and manufacturers from a traditional inside-out thinking to
an Outside-In, value-driven customer perspective. Its teams of value
creation experts have intimate knowledge of the challenges facing
healthcare providers and manufacturers today and share a common vision
for the future. Exogen will combine its knowledge and vision, with
best-in-class solutions developed in other industries, to bring to
market unique products and services for healthcare providers and
manufacturers.

    "Exogen is an exciting new organization with tremendous
intellectual property, outstanding capabilities and proven
experience," said D. Keith Pigues, Chief Marketing Officer of Ply Gem
and Chairman of the Business Marketing Association. "Its Outside-In
approach to customer value creation, is the basis by which all
companies should operate. Exogen's commitment to applying its proven
tools and vast experience to the healthcare delivery chain is
significant, as evidenced by the creation of this new company. With
customer-centric healthcare taking stride, the entire healthcare
supply chain: manufacturers, distributors, providers and payors can
benefit from becoming more consumer-focused. Exogen can add value to
each of these groups as they help them develop and execute profitable
growth strategies. There has never been a more challenging and
exciting time in healthcare - Exogen can be an important contributor
to the success of the players in this industry."

    "The team from Exogen, helped us fundamentally change the way we
look at our business," said Chuck Stein, President and Chief Marketing
Officer of Owens Corning. "With their unique 'Outside-In' approach to
understanding and creating customer value, we were able to quantify
the value impact our offerings were having on our customers. We were
then able to use that information to refine our go to market approach,

our organization and better engage our customers in our strategic planning process. The only competitive advantage companies will have in the future is to ensure they are positively impacting the financials of their customers. Exogen is helping us do that!"

"Exogen has an exciting, new platform," commented Dr. Raymond L. Baraldi, Jr., Associate Professor of Radiology at UMDNJ-Robert Wood Johnson Medical School and Chief of Radiology at Cooper University Hospital. "Their team helped us transform our Digital Imaging services into a more customer-centric model by leveraging technology to provide better services to our physicians and patients. Exogen's value proposition is unique. They are focused on helping clients accelerate time to value. In our environment, they took a rigorous and methodic approach to the deployment, adoption and institutionalization of our image management system. They were able to help us realize value in a very fast and efficient manner."

ABOUT EXOGEN

Exogen is a business solutions company that is focused on creating value for healthcare providers and manufacturers. Our solutions help lead the transformation of healthcare providers and manufacturers from a traditional inside-out thinking to an Outside-In value-driven customer perspective. Our teams of value creation experts have intimate knowledge of the challenges facing healthcare providers and manufacturers today and share a common vision for the future. We combine our knowledge and vision, with best-in-class solutions developed in other industries, to bring to market unique products and services for healthcare providers and manufacturers. We refer to our industry leading solutions as Experience and Certainty. Our proven Experience solutions leverage our exclusive Outside-In intellectual property helping our customers identify, understand and quantify value creation opportunities through the eyes of their customers. Our proven Certainty solutions deliver and sustain value in the areas of digital healthcare and operational transformation. Our entire suite of business solutions exist to deliver results. We have delivered hundreds of successful strategy, planning, implementation and optimization projects with extraordinary results and outstanding client references. For more information, please visit: www.exogeninc.com.

Exogen is a wholly-owned subsidiary of Technology Solutions Company.

About TSC

Technology Solutions Company (TSC) is a leading business solutions provider that partners with clients to expose and leverage opportunities that create, measure, and sustain the delivery of value to their customers. TSC serves the healthcare and manufacturing industries. For more information, please visit: www.techsol.com.

CERTAIN FORWARD-LOOKING STATEMENTS AND FACTORS THAT MAY AFFECT FUTURE RESULTS

This press release contains or may contain certain forward-looking statements concerning TSC's financial position, results of operations,

cash flows, business strategy, budgets, projected costs and plans and objectives of management for future operations as well as other statements including words such as "anticipate," "believe," "plan," "estimate," "expect," "intend," and other similar expressions. These forward-looking statements involve significant risks and uncertainties. Although TSC believes that the expectations reflected in such forward-looking statements are based on reasonable assumptions, readers are cautioned that no assurance can be given that such expectations will prove correct and that actual results and developments may differ materially from those conveyed in such forward-looking statements. TSC claims the protection of the safe harbor for forward-looking statements contained in the Private Securities Litigation Reform Act of 1995 for all forward-looking statements. Important factors that could cause actual results to differ materially from the expectations reflected in the forward-looking statements in this press release include, among others, TSC's ability to manage decreased revenue levels; TSC's need to attract new business and increase revenues; TSC's declining cash position; TSC's ability to manage costs and headcount relative to expected revenues; TSC's ability to successfully introduce new product and service offerings; TSC's ability to successfully introduce its new Exogen business subsidiary; TSC's dependence on a limited number of clients for a large portion of its revenue; the potential loss of significant clients; TSC's ability to attract new clients and sell additional work to existing clients; TSC's ability to attract and retain employees; the rapidly changing nature of information technology services, including TSC's ability to keep pace with technological and market changes and its ability to refine and add to existing service offerings; the lack of shareholder approved stock options available for grants by TSC to retain existing employees; and changing business, economic or market conditions and changes in competitive and other factors, all as more fully described herein and in TSC's filings with the Securities and Exchange Commission, press releases and other communications. Forward-looking statements are not guarantees of performance. Such forward-looking statements speak only as of the date on which they are made and, except as may be otherwise required by law, TSC does not undertake any obligation to update any forward-looking statement to reflect events or circumstances after the date of this press release. If TSC does update or correct one or more forward-looking statements, investors and others should not conclude that TSC will make additional updates or corrections with respect thereto or with respect to other forward-looking statements. Actual results may vary materially.

Technology Solutions Company
Timothy Rogers, Chief Financial Officer
312-228-4848
Tim.rogers@techsol.com
or
Exogen
55 East Monroe Street
Suite 2600
Chicago, Illinois 60603
312-228-4500

Copyright Business Wire 2007

© Thomson Reuters 2008 All rights reserved

# EXHIBIT E



**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

CHRISTOPHER P. BUSSERT
direct dial 404 815 6545
direct fax 404 541 3144
CBussert@KilpatrickStockton.com

March 18, 2008

VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. Timothy Rogers
Chief Financial Officer
Exogen
55 East Monroe Street
Suite 2600
Chicago, Illinois  60603

           Re:   Infringement of EXOGEN Mark

Dear Mr. Rogers:

        This law firm represents Exogen, Inc. of Memphis,
Tennessee, which is a wholly-owned subsidiary of Smith & Nephew,
Inc., a world leader in the manufacture of a wide range of
medical devices, instruments and accessories, in connection with
intellectual property matters.  As you may know, Exogen, Inc. is
the owner of a number of federal trademark registrations for
marks consisting or including the designation "EXOGEN" for a
line of medical devices including EXOGEN (U.S. Registration
No. 2,508,939); EXOGEN 2000 (U.S. Registration No. 2,211,871);
EXOGEN 2000+ (U.S. Registration No. 2,599,317); and EXOGEN 3000
(U.S. Registration No. 2,456,257).

        Our client recently learned of Technology Solutions
Company's plans to form a new business subsidiary named Exogen
Solutions LLC that will be providing goods and services to the
health care field.  Our client is greatly concerned that your
adoption and use of the EXOGEN name and mark will cause
confusion and deceive the relevant consuming public into
mistakenly believing that your Company and that its goods and
services are licensed, sponsored, authorized or endorsed by
Exogen, Inc.

Mr. Timothy Rogers
March 18, 2008
Page 2 of 4


As you may know, the unauthorized use of a federally registered mark in a manner that creates a likelihood of confusion constitutes a violation of Sections 32 and 43(a) of the Federal Trademark Act, 15 U.S.C. §§ 1114 and 1125(a) and of the common law of virtually every state.  Section 32 of the Federal Trademark Act, for example, provides that:

> Any person who shall, without the consent of the registrant
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Your trademark attorney can advise you that in cases in which the use of a confusingly similar mark has occurred, these same laws provide broad remedies, including injunctive and monetary relief.  Section 35 of the Lanham Act, for example, states that in such cases:

> [T]he plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any

Mr. Timothy Rogers
March 18, 2008
Page 3 of 4

> damages sustained by the plaintiff, and
> (3) the costs of the action.  The court
> shall assess such profits and damages or
> cause the same to be assessed under its
> direction.  In assessing profits the
> plaintiff shall be required to prove
> defendant's sales only; defendant must prove
> all elements of cost or deduction claimed.
> In assessing damages the court may enter
> judgment, according to the circumstances of
> the case, for any sum above the amount found
> as actual damages, not exceeding three times
> such amount.  If the court shall find that
> the amount of the recovery based on profits
> is either inadequate or excessive the court
> may in its discretion enter judgment for
> such sum as the court shall find to be just,
> according to the circumstances of the
> case. . . .  The court in exceptional cases
> may award reasonable attorney fees to the
> prevailing party.

You should note that various state deceptive trade practices, unfair business practices, and false advertising acts as well as the common law provide additional and alternative remedies for false advertising, including awards of punitive damages and attorney's fees.  Officers and directors of infringing corporations can be held jointly and severally liable for these damages.  If litigation is required, our client intends to pursue all appropriate remedies against Exogen and others involved in these unlawful acts.

We are writing you as a courtesy to afford you the opportunity to voluntarily discontinue all infringement by ceasing all use of the EXOGEN name and mark in connection with your business.

We look forward to hearing from you or your trademark attorney by no later than the close of business on **Friday, April 4, 2008**, confirming this action will be taken.  In the absence of such a response, we will assume that you are

Mr. Timothy Rogers
March 18, 2008
Page 4 of 4


attempting to trade upon the good will of our client's numerous
federally registered EXOGEN marks and will counsel our client
accordingly.

Sincerely,

Christopher P. Bussert

CPB/mcb
cc:  Exogen, Inc.



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Mr. Timothy Rogers
Chief Financial Officer
Exogen
55 East Monroe Street, Suite 2600
Chicago, Illinois  60603

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7002 0860 0006 5311 9556

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

## Brymer, Mari

| | |
|---|---|
| **From:** | Brymer, Mari on behalf of Bussert, Chris |
| **Sent:** | Tuesday, March 18, 2008 1:52 PM |
| **To:** | 'Stacey, George' |
| **Cc:** | Darren Donné Esq. (darren.donne@smith-nephew.com) |
| **Subject:** | Exogen |
| **Importance:** | High |
| **Attachments:** | demand letter to Exogen.pdf |



KILPATRICK
STOCKTON LLP
Attorneys at Law

Christopher P. Bussert
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta. GA 30309-4530
t 404 815 6545
f 404 541 3144

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

JUDGE PALLMEYER
MAGISTRATE JUDGE ASHMAN

AEE

# EXHIBIT F

LAW OFFICES
### BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ

A PROFESSIONAL CORPORATION

FIRST TENNESSEE BUILDING

165 MADISON AVENUE

SUITE 2000

MEMPHIS, TENNESSEE 38103

—

(901) 526-2000

FACSIMILE

(901) 577-2303

April 9, 2008

Christopher P. Bussert
Kilpatrick Stockton, LLP
1100 Peachtree St., Suite 2800
Atlanta, GA 30309

*Via FedEx*

Re:    *EXOGEN Mark*

Dear Mr. Bussert:

Further to my letter of March 31, 2008 requesting a ten day extension of time in which to respond to your concerns, we have had an opportunity to review this matter with our client and now write in response to your letter of March 18, 2008.

In your letter you expressed Exogen, Inc.'s concerns regarding Technology Solutions Company's plans to use the "Exogen Solutions LLC" trade name for its information technology subsidiary. As we will elaborate below, we do not believe that the use of the term "Exogen" by our client in its trade name will create a likelihood of confusion with your client's EXOGEN trademarks that are used on orthopedic-related, medical devices that are sold by Smith & Nephew.

Exogen Solutions provides services to healthcare facilities and to manufacturers. In the healthcare facilities space, its services focus on the deployment of medical imaging information technologies in such facilities and on providing performance management software for such facilities. In the manufacturing space, Exogen Solutions provides its customers with methodologies for the improvement of customer experience and profitability.

The Seventh Circuit Court of Appeals has articulated seven factors to evaluate whether a likelihood of confusion exists:

Christopher P. Bussert
April 9, 2008
Page 2

1. similarity between marks in appearance and suggestion;

2. similarity of the products;

3. area and manner of concurrent use;

4. degree of care likely to be exercised by consumers;

5. strength of plaintiff's mark;

6. actual confusion;

7. intent of the defendant to "palm off" his product as that of another.

*Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001).

Below we have provided an analysis of the factors in relation to the facts as we understand them:

*1.     Similarity between marks in appearance and suggestion:*  The marks are similar in that the term "Exogen" is used in Smith & Nephew's registered trademarks[1] and in Exogen Solutions' business name.

*2.     Similarity of the products:*  The products and services are not similar nor are they related.  Smith & Nephew advertises its EXOGEN medical devices as a "Bone Healing System," which appears to be a very narrow market segment.  We suspect that it is most likely a physician who makes the initial decision to order the product for a particular patient.

Exogen Solutions provides business and consulting services in the information technology field to healthcare facilities and manufacturers.  Exogen Solutions works closely with its customers' information technology professionals and upper-level professional management in order to sell and provide its services.

The goods offered by your client and the services offered by our client are not similar and they serve entirely different and unrelated purposes.  Further, the decision makers for the purchase of our respective clients' goods and services are likely different individuals.

*3.     Area and manner of concurrent use:*  The Seventh Circuit considers "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties" to assess this factor.  *American Society of Plumbing Engineers v. TMB Pub., Inc.*, 109 Fed.Appx. 781, 790 (7th Cir. 2004).  It is our understanding that Smith & Nephew sells medical devices under the EXOGEN marks upon the order of a physician and that patients use the devices under a physician's supervision either in a healthcare facility or in their homes.  We

---

[1] Smith & Nephew's federal registration for EXOGEN 4000+ claims ownership of "U.S. Registration Number(s) 1904306, 2211871, 2508939, and others."

Christopher P. Bussert
April 9, 2008
Page 3

believe that sales are likely targeted to physicians or healthcare professionals and not to a healthcare facility's upper-level management.

Exogen Solutions offers its services to healthcare and manufacturing facilities. It does not offer its services to patients or to treating physicians. Though it may be possible that a certain healthcare facility may actually purchase EXOGEN products from Smith & Nephew and also purchase services from our client, however, it is likely that these purchase decisions would be made by different individuals in different departments of such a healthcare facility given the unrelated nature of the products and services.

In addition to the above, it is our understanding that it is clear to a purchaser of your client's product that they are purchasing a Smith & Nephew product. Further, Smith & Nephew's website advertises the EXOGEN products as its own "Bone Healing System" and that the EXOGEN trademark is a trademark of Smith & Nephew. It is very clear to the market that your client's "Exogen" products emanate from Smith & Nephew, and not from a company named Exogen, Inc.

We believe that it is likely that the purchase decisions for your client's products are made by physicians or healthcare professionals and that the healthcare facility may actually be the purchasing entity is merely acting at the instruction of the physician or healthcare professional. It is extremely unlikely that the individuals who make the purchase decision for your client's products would be the same individual who would make the purchase decision for our client's services. There is, therefore, little to no relationship in use, promotion, distribution or sales of your client's products and our of our client's services.

4.      *Degree of care likely to be exercised by consumers*:  In each case, the purchase decision of your client's goods and our client's services are made by professionals who are well aware of the sources of the goods and services that they are purchasing. We assume that the cost of an EXOGEN Bone Healing System is not insignificant and that a decision to purchase (or prescribe for a patient) will have only been made after intense scrutiny of the product by a physician along with scrutiny of the medical literature supporting the effectiveness of the product. Similarly, the costs of Exogen Solutions' information technology services are not insignificant, and a decision to purchase such services is generally made only after numerous contacts between a purchaser and Exogen Solutions and only upon the execution of a contract for such services. Degree of purchaser care in both instances is high.

5.      *Strength of plaintiff's mark*:  The term "Exogen" has origins in the Greek "exo-," meaning outside, and "-gen," meaning that which produces. The term "exogenous" means "originating from outside, derived externally or caused by outside factors." Because your client's products operate by producing external ultrasonic waves to accelerate internal healing, we believe the mark, as applied to your client's goods, is suggestive. While suggestive marks do not require any showing of secondary meaning, they do have a weaker conceptual strength than fanciful or arbitrary marks and signify that the mark is not strong.

Christopher P. Bussert
April 9, 2008
Page 4

In addition to being suggestive, the mark is weak in that there are quite a few other "exogen" type marks used in the market, including a number that are specific to healthcare. The records of the Patent and Trademark Office show numerous marks that are phonetically and visually similar to the term "Exogen," those results are as follows:

| MARK | GOODS | OWNER |
|---|---|---|
| EXERGEN<br><br>RN:2,802,117 | (Int'l Class: 10) Infrared radiation detectors, infrared radiation scanners, and infrared radiation thermometers, for human medical and veterinary use | Exergen Corporation (Massachusetts Corp.) |
| EXTRAGEN<br><br>EXTRAGEN<br><br>SN:78-804664 | (Int'l Class: 1) Chemicals, namely, gene testing reagents for research use<br>(Int'l Class: 5) Pharmaceutical, veterinary and sanitary preparations, namely, gene reagent for medical diagnostic use | Tosoh Corporation (Japan Corp.) |
| EXAGEN<br><br>EXAGEN<br><br>SN:78-969330 | (Int'l Class: 9) Computer software for diagnostic and prognostic patient testing in various disease states; computer software for identifying biological markers for use in diagnostic and prognostic patient testing in various disease states | Exagen Diagnostics, Inc.<br>(Delaware Corp.) |
| EXAGEN<br><br>EXAGEN<br><br>SN:78-969309 | (Int'l Class: 5) Biological markers in the nature of nucleic acid probes, detectable labels for the nucleic acid probes, buffers, and reagents, and testing kits containing the same, for use by others in diagnostic and prognostic patient testing in various disease states | Exagen Diagnostics, Inc.<br>(Delaware Corp.) |
| EXAGEN<br>(Stylized)<br><br>eXagen<br><br>SN:78-969453 | (Int'l Class: 9) Computer software for diagnostic and prognostic patient testing in various disease states; computer software for identifying biological markers for use in diagnostic and prognostic patient testing in various disease states | Exagen Diagnostics, Inc.<br>(Delaware Corp.) |
| EXOGEN<br><br>RN:2,756,959 | (Int'l Class: 9) Computer software for managing web content | Netxposure, Inc.<br>(Oregon Corp.) |

Christopher P. Bussert
April 9, 2008
Page 5

| MARK | GOODS | OWNER |
|---|---|---|
| EXIGEN<br><br>RN:2,806,926 | (Int'l Class: 9) Computer software for integrated e-business, front-office, back-office, and self-service processes<br>(Int'l Class: 42) Consulting services, namely design of computer software and computer programming for others; computer software consulting services<br>(Int'l Class: 35) Business consulting services | Exigen Properties, Inc.<br>(Virgin Islands (British) Corp.) |
| EXIGENT LABS<br><br>EXIGENT LABS<br><br>SN:78-748574 | (Int'l Class: 9) Computer software for use in the field of business management and administration, namely, for use in financial accounting, cost accounting, and stock control, time and billing records, and human resources management, and in processing data relating to employees, employment history and pay records, and related instruction manuals sold as a unit | Exigent Labs<br>(Virginia Limited Liability Company) |
| EXIGENT LABS<br><br>EXIGENT LABS<br><br>SN:78-748348 | (Int'l Class: 42) Software design and development services for collecting, organizing, managing and displaying data systematically and computerized relating to information management to enable inter-agency information sharing in the collection, analysis, distribution and presentation of data | Exigent Labs<br>(Virginia Limited Liability Company) |
| XIGENT<br><br>RN:2,551,571 | (Int'l Class: 42) Computerized graphic art design and web site development services | Xigent.Net Inc.<br>(Delaware Corp.) |
| NEXIGEN<br><br>nexigen<br><br>RN:3,193,945 | (Int'l Class: 42) Application service provider (asp), namely, hosting computer software applications of others; design, creation, hosting and maintenance of internet sites for third parties; development, updating and maintenance of software and data bases; planning, development and technical support of electronic communications networks; registration of domain names for identification of users on a global computer network | Nexigen Communications, LLC, John J. Schaffer - United States Jon D. Salisbury - United States<br>(Kentucky Limited Liability Company) |

Christopher P. Bussert
April 9, 2008
Page 6

| MARK | GOODS | OWNER |
|---|---|---|
| X-GEN (STYLIZED)<br><br>X-Gen<br><br><br><br>RN:2,958,885 | (Int'l Class: 9) Computer software for use in the financial services industry, namely, delivery of information for financial transactions | Swissrisk Ag (Federal Republic of Germany Corp.) |
| XPOGEN<br><br>RN:2,672,367 | (Int'l Class: 9) Computer software for application and database integration, namely, computer architecture program used for database management and computer application software used in managing, analyzing and visualizing genetic, phenotypical, diagnostic and other biological research data in the field of drug discovery and biological research<br>(Int'l Class: 42) Consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others, technical support services, namely, troubleshooting of computer hardware and software problems, technical consulting services in the field of scientific and medical research, drug discovery and biological diagnostics, and bioinformatics | Xpogen, Inc. (Delaware Corp.) |

These results do not even include the numerous common-law uses of similar terms.

Since your client's mark is suggestive and co-exists with other similar marks in the field of healthcare as well as with uses in the greater market which may also be used by healthcare facilities, we believe that your client's mark is weak in the field of healthcare.

6.    *Actual confusion:* It is our understanding that there is no evidence of any instances of actual confusion.

7.    *Intent of the defendant to "palm off" his product as that of another:* Exogen Solutions chose its mark as a way to distinguish its information technology services from others because the mark has no meaning as applied to its services. Exogen Solutions has no intention of

Christopher P. Bussert
April 9, 2008
Page 7

"palming off" its services as those of Smith & Nephew,  Exogen, Inc.  or any other third party.

Although we have conceded that both of our clients use the term "Exogen" and operate within the healthcare industry, a multi-trillion dollar industry, factors two through seven above all either fall in our client's favor or are neutral.  We believe, therefore, that our client's use of its trade name Exogen Solutions will not create a likelihood of confusion with Smith & Nephew's EXOGEN mark for medical devices.

While we can appreciate your client's initial concerns, we cannot agree that there is a likelihood of confusion created by our client's use of Exogen Solutions LLC as a trade name.  If you believe that we have overlooked important legal, factual or other authority, please point it out to us and we will be happy to revisit our analysis in light of any information you may bring to our attention.  Otherwise, we hope that this matter can be closed.

Sincerely yours,

Valerie W. Johnson /evj

Valerie Walsh Johnson

cc:  Technology Solutions Company